## PIERPOINT BOILER CO. v. PENN IRON & COAL CO. et al.

### (Circuit Court, N. D. Ohio, E. D.   May 21, 1896.)

**1. ASSIGNMENT OF PATENT—BREACH OF CONDITIONS—REVERSION OF TITLE.**

A patentee assigned his patent to a corporation upon an agreement that he should be its salaried superintendent, and also receive one-fourth of its profits; the corporation agreeing that, should it cease to exist, or fail for an unreasonable time, "on account of its own indifference or neglect," to manufacture the patented machinery, the contract should be void, and the patent revert to the patentee, or his heirs or assigns. The patentee afterwards assigned his reversion. About four years later the corporation was dissolved by decree of a proper court, upon a petition of its stockholders and directors, alleging that the objects for which it was organized had wholly failed. Ten years afterwards, and after the patent had become valuable, the decree of dissolution was set aside at the instance of parties who had bought up the stock, on the pretext of administering some newly-discovered assets. *Held,* that these facts showed that the corporation had ceased to make the patented machines through "its own indifference and neglect"; that the title to the patent had, therefore, reverted by operation of law, without the aid of judicial proceedings; and that the assignment of the reversion transferred a good and valid title.

**2. SAME—ESTOPPEL BY JUDGMENT.**

About a year after the decree of dissolution, and in 1886, the assignees of the reversionary interest in the patent set up by answer and cross petition, in a suit pending in a state court, a claim against the stockholders of the corporation for damages for alleged breach of the covenants in the agreement. Upon this issue the court held that there had been no negligence on the part of the corporation, and that no reversion had accrued at the time of the filing of the cross petition. *Held,* that this decision did not estop the assignees of the reversion from claiming, in a suit brought by them on the patent several years afterwards, that they had acquired title by reversion, for, even if there was no breach of the agreement in 1886, a breach may have taken place in the subsequent years.

This was a suit in equity by the Pierpoint Boiler Company against the Penn Iron & Coal Company and the Stirling Company for infringement of a patent relating to water-tube boilers.

Bakewell & Bakewell, for complainant.

Banning & Banning, for defendants.

RICKS, District Judge. This case is now before the court upon an issue made between the parties as to the title which the complainant has to letters patent issued to Arthur H. Fowler for an improvement in water-tube boilers, granted October 12, 1880,—No. 233,228. The issue was directed to be framed by the court as to whether the complainant had legal title to the patent sued upon, and under that

issue proofs have been taken. The complainant claims title through an agreement dated April 27, 1881, by which the patentee, Fowler, agreed to transfer and assign to the Fowler Manufacturing Company all his right, title, interest, and claim to the patent in suit, in consideration of which the complainant was to pay him one-fourth of its profits, and employ him on a salary as superintendent. It was also provided in said contract:

"And the said Fowler Manufacturing Company further agrees that, should it, from any cause, cease to exist, or fail for any unreasonable length of time, on account of its own indifference or neglect, to manufacture the boilers and machinery covered by the patents of said Fowler, this contract shall cease, and be null and void, and said patents revert to said Fowler, his heirs or assigns; or should the said company sell or assign its interest in the property and assets of the same without the consent of said Fowler, then all the right, title, and interest in said patents shall revert to him, his heirs or assigns, as aforesaid. This contract shall be in force and take effect when approved by the directors, countersigned by the president and secretary of the company and A. H. Fowler, and ratified and confirmed by the stockholders."

This agreement was duly signed by all the parties, and ratified and confirmed by the directors and stockholders of the Fowler Manufacturing Company. On the 20th of September, 1881, in compliance with this agreement, the patentee made an assignment to the Fowler Manufacturing Company. This assignment, though absolute on its face, the complainants claim was in harmony with the agreement to convey made in April preceding, and that it was made subject to the provisions of the April agreement, to revert to the patentee in case the company ceased to exist, or, on account of its failure, for any unreasonable length of time, on account of its own indifference or neglect, to manufacture the boilers covered by the patent.

The complainants further claim title through a deed from Fowler to J. W. Latimer, assigning the former's interest in the contract of April, 1881, with the rights and reversions thereunder, to the said Latimer, together with a deed of assignment dated September, 1882, from Latimer to Travers, Davis & Flory, and later, in March, 1895, by deeds from Latimer, Flory, Davis, and the administrator of Travers, assigning the patent to the Pierpoint Boiler Company, and by deed of assignment dated March 30, 1895, from Fowler to the Pierpoint Boiler Company. The complainant further offers, as a chain in its title, a decree from the court of common pleas of Licking county, Ohio, at its May term, 1885, decreeing the dissolution of the Fowler Manufacturing Company, and appointing a receiver, followed by proof that at that time said company had ceased to do any business, and had thus broken the terms of the agreement of April, 1881, so that the title reverted to Fowler.

The defendants' objections to the complainant's title are:

"First, that the condition and agreement of April, 1881, were abrogated by the subsequent absolute assignment of September, 1881, from Fowler to the Fowler Manufacturing Company, and therefore that no reversion of title under any circumstances could take place; second, that the condition of the agreement of April, 1881, was not ratified by the stockholders, and is, therefore, incomplete; third, that the Fowler Manufacturing Company has not ceased to exist, because the decree of 1885, which decreed its dissolution, was set aside in the autumn of 1895; fourth, that the ceasing to manufacture

the patented boilers was not due to the indifference or neglect of the Fowler Manufacturing Company, and therefore that breach of the condition has not occurred; fifth, that the complainants are estopped by a prior decree to deny the title of the Fowler Manufacturing Company."

The original agreement between A. H. Fowler and the Fowler Manufacturing Company of April 27, 1881, when construed with reference to the relations of the parties and their surroundings, makes it very clear that Fowler intended by said agreement to transfer his patent to parties who would manufacture boilers under it, and therefore enable him to realize some advantage from the invention which he made. This is evidenced by the fact that, not only by the terms of the contract was Fowler to be employed as mechanical superintendent at a salary of $1,200 per year, but that Fowler was to receive one-fourth part of the profits made, earned, and realized by the manufacture and sale of the boilers, machinery, and attachments, and, in order to protect him from the danger of having the right to use the patent pass to persons who should fail to use it, a provision was incorporated that, should the Fowler Manufacturing Company, "from any cause, cease to exist, or fail for any unreasonable length of time, on account of its own indifference or neglect, to manufacture the boilers and machinery covered by the patents of the said Fowler, this contract shall cease, and be null and void, and said patents revert to said Fowler, his heirs and assigns." A contract of this character should be liberally construed, and the objects and purposes the parties had in contemplation should be carried out as near as possible. Now, it seems clear to me that, within the spirit and meanings of this contract, the Fowler Manufacturing Company ceased to exist, and failed for an unreasonable length of time, on account of its own indifference or neglect, to manufacture the boilers. This is clearly established by a petition filed by its own stockholders and directors in the court of common pleas of Licking county, Ohio, in January, 1885. In that petition it was recited that:

"The objects for which said corporation was organized and incorporated have wholly failed, and the accomplishment thereof has proved impracticable. Your petitioners therefore pray that the said Fowler Manufacturing Company may be dissolved as a corporation in the manner provided by title 1, decision 7, chapter 5, of the Revised Statutes of Ohio."

In view of this ante mortem statement of the corporation, it can hardly be permitted to now claim that a resurrection took place by a subsequent decree of the same court, made some 10 years later. As between Fowler and the Fowler Manufacturing Company, the latter ceased to exist. According to the terms of the contract of April, 1881, the title to this patent reverted to the patentee.

Some contention was made by the defendants' counsel as to the execution of the agreement of April, 1881, and as to its ratification and approval by the directors and stockholders of the Fowler Manufacturing Company. The testimony, it seems to me, clearly supports the claimant's contention in this regard, and I find that the said contract was duly executed, and properly approved by the assignee. The agreement set out on page 73 of the printed record, and to which the name of A. H. Fowler is not attached, is clearly a copy of the original. The original bears the signatures of all the parties

and, as I have already said, was properly executed. But it is contended on behalf of the defendants that this agreement of April, 1881, was superseded by the assignment of September, 1881, between the same parties. The instrument executed on the 20th of September, 1881, was a formal assignment for the consideration of one dollar, and other good and sufficient considerations, from Arthur H. Fowler to the Fowler Manufacturing Company. Under the agreement of April, 1881, Fowler obligated himself to make an assignment of the patent. This assignment was undoubtedly made in pursuance of said agreement. It bears nothing on its face to show that it was intended to supersede the agreement of April preceding, and it seems to me it would be exceedingly inequitable to hold, in the absence of proof of an intention so to do, that Fowler, without any consideration, relinquished the protecting clauses in the agreement of April, and intended the assignment of September to be absolute and unconditional. The testimony of witnesses was taken, not for the purpose of varying or contradicting the terms of either of these contracts, but to show the surroundings of the parties, and their probable intention; and from this testimony it appears that the purpose of making this formal assignment of September, 1881, was to have a transfer of title which could be put upon the record without incumbering it with the details of the contract and agreement of the parties moving as a consideration therefor. Mr. Flory, who was one of the stockholders of the Fowler Manufacturing Company, and a lawyer by profession, testifies that Fowler said he was willing to make the assignment if it would not interfere with his rights under the contract, and thereupon Flory told him he did not think it would. Under such circumstances, and under such advice, he made the assignment of September, 1881. That Fowler did not intend this assignment to supersede the April contract is shown by the terms of the agreement or assignment which he made to J. W. Latimer in September, 1882. In that instrument he transfers any reversionary interest that may come to him under the contract of April, 1881, to Latimer. I am therefore of the opinion that this assignment was made as a part of the agreement covered by the contract of April, 1881, and did not in any way supersede it; so that the first objection the defendants urge to the complainant's title is not well taken.

The second objection—that the condition of the agreement of April, 1881, was not ratified by the stockholders—is not founded in fact. The record shows an extract from the minutes of the stockholders, specifically ratifying this contract.

The next contention is that the Fowler Manufacturing Company has not ceased to exist, and that the conditions recited in the contract of April, 1881, under which the title would revert, have never existed. As before stated, the dissolution of the Fowler Manufacturing Company was decreed by the court named. Some years afterwards, when this patent became of value, certain parties bought up the controlling stock of the Fowler Manufacturing Company, and, upon the pretext of administering some newly-discovered assets, a petition was filed, asking the court to set aside the decree of dissolution, and reviving the corporate life. This was in 1895,—10 years after the decree of

dissolution.   This contention, though urged with a great deal of seriousness, is not sustained by the record and the facts of the case.

The fourth objection to the complainant's title is substantially covered by the third.

The fifth objection is that the complainant is estopped, by the prior decree, to deny the title of the Fowler Manufacturing Company.   It seems from the record that in the September term, 1888, of the court of common pleas of Licking county, a suit was pending between Scheidler and the Fowler Manufacturing Company.   In that proceeding, Latimer, Travers, Davis, and Flory, by answer and cross petition, set up the agreement of April, 1881, hereinbefore referred to, the insolvency of the Fowler Manufacturing Company, its failure to do business, the consequent breach of the covenants of the agreement, and prayed for assessment of damages.   The case was referred to a master commissioner, who found that the Fowler Manufacturing Company had not failed to carry out its agreement with Fowler.   In that proceeding, Latimer and his associates sought to recover damages for the failure of the Fowler Manufacturing Company to comply with the conditions of the agreement of April, 1881.   So that the question in issue there was whether the corporation was liable in damages for such breach.   The only question proper in issue was the liability of the corporation in damages for its failure to exercise diligence in carrying on its business.   But the only penalty mentioned in the contract of April, 1881, in case the assignee ceased to exist, was that the patent should revert to the patentee and assignor.   In that case the court held that at the time Latimer's petition was filed, to wit, in August, 1886, there had been no negligence on the part of the Fowler Manufacturing Company, and that no reversion of the patent had accrued.   There are no reasons given for this holding, but nine years elapsed between that date and the final decree of the court in the other case reviving the defunct corporation, and restoring it to corporate life.   The conditions may not have been broken in 1886, but may have been broken in 1895.   The relations of the parties are not such as to operate as an estoppel so as to make the issues res adjudicata. But it is contended on behalf of the defendants that no judicial proceedings have ever been instituted to set aside this assignment of the patent, and to declare the title to have reverted to the assignor by reason of the breach of the conditions of the contract of April, 1881.   I do not think such proceedings were necessary to accomplish this result.   There is no question but what the conditions were broken, and I think the title reverted to the assignor by operation of law.   All that is necessary, now that there have been judicial proceedings to test the title, is to show that the conditions were broken; and this, I think, has been done.   It seems to me that the defendants' contentions in this case are somewhat strained on every point, and that the equities of the case are with the complainant, and that a clear title has been shown to exist in it, which will authorize it to maintain this suit.   A decree may be prepared accordingly.